PETER LUKOWICZ *vs.* PLANTATIONS CONSTRUCTION COMPANY, INC.

APRIL 24, 1958.

PRESENT: Condon, C. J., Roberts, Andrews and Paolino, JJ.

ROBERTS, J. This is an employee's original petition for compensation. The case was heard by a trial commissioner who on January 16, 1957 entered a decree wherein it was found that the petitioner while at work in the respondent's employ in June 1955 had aggravated a pre-existing back condition which partially incapacitated him as of May 16, 1956. From this decree the respondent appealed to the full commission which on April 9, 1957 entered a decree affirming the decree of the trial commissioner. The case is here on the respondent's appeal from that decree.

The material facts of the case are not in dispute. The petitioner in June 1955 was employed by respondent who was building a boardwalk at Scarborough Beach. The petitioner and several other employees were engaged in carrying a large and heavy timber. The entire weight of this timber was thrown on petitioner when the other employees,

unexpectedly released their hold upon it. The petitioner testified that at that moment he felt a severe pain in his lower back. He further testified that he continued to work thereafter for several months although his back "bothered" him, but that the pain was not intense enough to cause him to cease working.

However, during the ensuing winter months his back pains increased in intensity and in March 1956 he consulted his family physician, Dr. Peter Koch of West Warwick. On May 16, 1956 he stopped working and has not worked thereafter. Since that time the petitioner has been under the continuous care of Dr. Donald Larkin, and on September 28, 1956 he was examined in respondent's behalf by Dr. Henry B. Fletcher.

It is clear from the uncontradicted medical evidence that petitioner is suffering from spondylolisthesis, a congenital malformation of spinal vertebrae by reason of which such vertebrae do not interlock in the normal fashion. Because such vertebrae do not efficiently interlock, the vertebrae in some instances will slip forward causing pain. In the instant case it is not disputed that petitioner's pain has been caused by such a displacement of certain of his spinal vertebrae. The trial commissioner found in effect that the incapacity of petitioner resulted from a slippage of the vertebra which in turn was caused by the incident of June 1955. The finding as set out in the decree appealed from is: "That said incident aggravated a pre-existing back condition."

The respondent argues that there is no legal evidence in the record which supports a finding that the June 1955 incident aggravated the condition of petitioner's back. It contends that the disabling slippage is a result of spinal deterioration flowing from petitioner's advancing age. On oral argument, however, respondent conceded that if there is any evidence in the record that petitioner's back condition was aggravated by the incident described, such evi-

dence would bring the case within our well-established rule that where the findings of the commission are supported by legal evidence such findings are conclusive and binding upon this court. *Jacob* v. *Moshassuck Transp. Co.,* 84 R. I. 514, 125 A.2d 184.

An examination of the transcript reveals a paucity of direct evidence bearing on the question of the causal connection between the incident which occurred in June 1955 and the spondylolisthesis from which petitioner's incapacity results. However, in our opinion, there is evidence in the record which submits to a reasonable inference that the defective condition of petitioner's spine was aggravated by the incident of June 1955.

In the first place there is the petitioner's own testimony concerning the development of pain in his back after the incident of June 1955. He testified upon inquiry as to whether his back bothered him: "It bothered me, but not enough to quit." This testimony was given with reference to the period immediately following the incident of June 1955. He further testified: "My back was getting worse in the winter months, probably around February it started to go the other way, it started getting worse but I continued working until May 15, 1956."

We also have the testimony of Dr. Donald Larkin, the attending physician. Doctor Larkin was asked if the incident of June 1955 had a causal relationship to the slipping out of the vertebra. He replied: "I don't know. I think that the incident of June '55, according to his history given to me brought on symptoms or made his back symptomatic and that the symptoms had become progressively more severe and more frequent since that time." The trial commissioner asked him: "Due to what?" The witness replied: "Due to the lifting of the beams he gave in the history to me. We know that the defect was there." The medical witness was then asked: "Do you feel that this

lifting of the beam lighted it?" The witness replied: "Aggravated it." ·

Doctor Larkin was also asked what caused the pain and whether lifting of heavy objects would cause difficulty with the spinal condition. In answer thereto he testified: "Slipping—probably, that we can't say with any degree of certainty because we don't have any x-rays previously. I think we must assume that it was there and then the lifting probably tore off some ligamentous attachment to this instable vertebra, thereby causing pain."

It is true that the quoted testimony of this medical witness contains language which implies uncertainty. It is our opinion, however, that despite this veneer of uncertainty the testimony when taken as a whole and considered in the light of the subject matter is of an affirmative, positive character and of substantial probative force. The witness' tendency to preface evidentiary statements with expressions of doubt is not enough to destroy the substance of his testimony, which in our opinion constitutes competent legal evidence from which the commission was warranted in drawing an inference that the symptomatic condition of petitioner's spinal defect resulted from an aggravation thereof by the incident of June 1955.

The respondent also appealed on the ground that the commission was without jurisdiction under the provisions of the act then in effect to award a fee to the petitioner's attending physician as an expert witness. The petitioner concedes this point, and therefore the finding numbered 10 in the decree appealed from and the order contained therein directing the respondent to pay an expert witness fee to the petitioner's attending physician should be stricken from that decree.

The respondent's appeal is denied and dismissed, the decree appealed from as modified is affirmed, and the cause

is remanded to the workmen's compensation commission for further proceedings.

*John Quattrocchi, Jr.,* for petitioner.

*Boss, Conlan, Keenan, Bulman & Rice, John T. Keenan,* for respondent.